# Hoopes & Townsend Company *v.* Ebel, Appellant.

*Attachment under the act of* 1869—*Fraudulent debtor's act—Execution.*

A carter, without criminal knowledge or intent and without fraud or such gross negligence as amounted to fraud, but with such knowledge and failure to exercise due care as would debar him from setting up the special and exceptional privilege of a carter in defense to a civil action brought against him by the party injured, assisted a thief in the felonious conversion of the goods of another by hauling them from the premises of the owner to places designated by the thief, and storing some of them upon his own premises. For the value of the services thus rendered, he issued an attachment under the act of 1869 and obtained a judgment against the thief not collusively, but by adverse, regular and legal proceedings. Subsequently the owner by an attachment under the act of 1869 seized the goods stolen, and also a machine the property of the thief, which had never been the property of the owner of the goods stolen, and which had not been acquired by the thief in exchange for the stolen goods or the proceeds thereof, but which was covered by the carter's attachment. The carter under his judgment levied on the machine, and in an interpleader between himself and the owner of the stolen goods he recovered a judgment against such owner for the value of the machine. Subsequently the owner of the stolen goods filed a bill in equity against the carter to restrain him from bringing any action to recover the machine or its value. *Held*, that the complainant was without equity, had an adequate remedy at law, and that the bill should be dismissed.

## 460 HOOPES & TOWNSEND CO. *v.* EBEL, Appellant.

The jurisdiction given to a court of equity for the prevention or restraint of the commission of acts contrary to law and prejudicial to the rights of individuals, was never intended to be used to˙ obstruct the collection of debts. It is only where the creditor is clearly and undeniably proceeding against right and justice, to use the process of the law to the injury of another, that equity intervenes to stay his hand.

Argued Dec. 11, 1907. Appeal, No. 182, Oct. T., 1907, by defendant, from decree of C. P. No. 2, Phila. Co., March T., 1905, No. 1,296, on bill in equity in case of Hoopes & Townsend Company v. Charles A. Ebel. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Bill in equity to restrain proceedings at law. Before SULZBERGER, P. J.

The facts are stated in the opinion of the Superior Court.

The court entered a final decree as follows:

And now, to wit: April 3, 1907, the above case having been fully heard on bill, answer and proof, it is ordered and decreed that the defendant, Charles A. Ebel, be permanently restrained from proceeding upon the judgment obtained by him for $557.12 against the plaintiffs, Hoopes & Townsend Company, upon the interpleader proceedings in court of common pleas, No. 2, September Term, 1902, No. 483, and from hereafter bringing any action or suits at law to recover the machinery or the value thereof, or any other estate of Gabriel E. Corwin, known as Eugene Corwin, seized under attachment proceedings issued out of court of common pleas, No. 4, September Term, 1902, or any other property or estate of the said Gabriel E. Corwin, which came into the possession of the said Hoopes & Townsend Company and was received by them in payment or part payment of the stolen goods from them by the said Gabriel E. Corwin and his accomplices.

*Error assigned* amongst others was the decree of the court.

*Alex. Simpson, Jr.,* with him *John S. Hershey,* for appellant.— It is not knowledge, even supposing that Ebel had it, that

renders him liable in this action. Even supposing Ebel had lost his carter's exemption .(we think the court in finding this fact is in error), that could, at most, only be the basis of an action at law in trover; it cannot form the basis of a judgment in this court restraining the defendant from proceeding on his judgment at law.

The right to be enforced in equity must be one which municipal law can take cognizance of and not one which falls merely within the scope of moral law. Equity will not set aside a transaction simply because it is opposed to that delicate sense of right which every conscientious man ought to have: Rees v. Watertown, 86 U. S. 107; Heine v. Levee Commissioners, 86 U. S. 655; Lacombe v. Forstall's Sons, 123 U. S. 562 (8 Sup. Ct. Repr. 247); Lewis v. Cocks, 90 U. S. 466; Heilman v. Union Canal Company, 37 Pa. 100; Carlton v. Salem, 103 Mass. 141; Dowell v. Mitchell, 105 U. S. 430.

*John H. Fow*, for appellee.—Any one who assists in the wrongful taking of the property of another is liable, although he merely acted as an agent, for agency cannot be advanced as a protection where a wrong or a crime has been committed: Miller v. Browarsky, 130 Pa. 372; Shaw v. Levy, 17 S. & R. 99; Sinclair v. Healy, 40 Pa. 417; Lecky v. McDermott, 8 S. & R. 500; Rapp v. Palmer, 3 Watts, 178.

Equity will declare a trust in favor of the owner whose property has been stolen as to the property purchased by the thief, with the proceeds of his larceny; though no fiduciary relations existed: Bank v. Johnson, 71 N. W. Repr. 294; Beulah Marble Co. v. Mattice, 22 Colo. 547 (45 Pac. Repr. 432); Griswold v. Griswold, 111 Ala. 572 (20 So. Repr. 437).

The court below held that it had jurisdiction to restrain the appellant from proceeding to collect from the appellees the amount of a judgment because of the peculiar, and suspicious, circumstances, surrounding the relationship between the appellant and his alleged creditor and especially when the amount to be collected represented the value of a machine bought with goods stolen from the appellees, and where the judgment creditor was more than a mere carter and who possessed a knowledge

that should have put him on his guard that he was not dealing with or associating with honest men: Winch's Appeal, 61 Pa. 424; Taylor's Appeal, 93 Pa. 21; Davis v. Michener, 106 Pa. 395.

OPINION BY RICE, P. J., December 7, 1908:

Charles A. Ebel, the defendant, commenced an action of assumpsit by attachment under the act of 1869 against one Corwin, and by virtue of the writ the sheriff attached as Corwin's certain goods that he and his confederates had stolen from Hoopes & Townsend Company, Corwin's employer, and in addition to these a bolt head machine, which is the sole subject of the present controversy.  On the following day, Hoopes & Townsend Company issued a similar writ against Corwin by virtue of which, the sheriff returned, the same goods were attached, subject to the Ebel attachment.  A short time later, Corwin confessed judgment to Hoopes & Townsend Company for $1,857.05, and in the paper confessing judgment authorized the sheriff to deliver to the company the goods attached, and declared that he had defrauded the company of them.  After this, Ebel obtained judgment for want of an affidavit of defense for $508.86 in his action against Corwin, and issued a fi. fa. thereon.  A sheriff's interpleader issue was awarded between Hoopes & Townsend Company and Ebel in which the former filed a statement claiming title to all the goods seized, including the bolt head machine, by delivery to it by the sheriff by virtue of the above-recited paper, and also averring that the bolt head machine was never the property of Corwin.  Upon the trial of the issue the court gave binding instructions for Ebel as to the bolt head machine, on the ground that the claimant, Hoopes & Townsend Company, had not shown a valid title to the machine.  As to the other goods, verdict was rendered for Hoopes & Townsend Company. After judgment on the verdict, from which no appeal was taken, this bill in equity was filed, and after hearing on bill, answer and proof, it was decreed that Ebel be permanently restrained from proceeding upon the judgment obtained by him for $557.12 against Hoopes & Townsend Company upon

the interpleader, and from hereafter bringing any action or suits at law to recover the machinery or value thereof, or any other estate of Corwin seized under the attachment proceedings, or any other property or estate of Corwin which came into possession of Hoopes & Townsend Company, and was received by them in payment or part payment of the goods stolen from the company by Corwin and his accomplices. From this decree we have the present appeal.

We must regard the judgment in the interpleader as conclusively determining that, in law, Hoopes & Townsend Company have no title to the bolt head machine which it could maintain as against Ebel's attachment, judgment and execution. And even if the company's claim of ownership, or the source or character of Corwin's title, could be made the subjects of investigation in the subsequent equity suit, the court's findings in the latter suit, that the machine was at no time the property of Hoopes & Townsend Company, and that there is no competent evidence that it was purchased or received by Corwin in exchange for goods, or the proceeds of goods, stolen from the company, leave the question of ownership precisely where it was left by the judgment in the interpleader. In short, the machine never belonged to Hoopes & Townsend Company, and Corwin's title was impressed with no trust in Hoopes & Townsend Company's favor growing out of the source of the money or the property which Corwin used to acquire it; neither Hoopes & Townsend Company's money nor property is traced into this machine. Upon what equitable principle, then, can Ebel be restrained, not only from proceeding on his judgment against Corwin to recover his debt out of this property, but also from proceeding on his judgment for the value of it obtained against Hoopes & Townsend Company in the interpleader? The answer to this question is supposed to be found upon a consideration of the nature of the debt for the recovery of which the former judgment was obtained, the circumstances under which it was incurred and the nature of Hoopes & Townsend Company's claim against Corwin. We are justified in speaking of it as Corwin's debt to Ebel, because the learned judge has found from the evidence, properly we

think, that, as between them, there was a valid and an enforceable obligation on Corwin's part to pay to Ebel the money for which the judgment was recovered. Upon this subject the learned judge says: "When, therefore, it was attached by Ebel, on September 10, 1902, it was, as between Ebel and Corwin, the property of Ebel under such attachment. Ebel had rendered service to Corwin, and Corwin owed him the value thereof, and the mere fact that Corwin had no title to the goods stored and hauled was no defense to Ebel's claim for storing and hauling them. As the goods were stolen, Ebel, had he been a party to. the theft, could not have maintained an action against Corwin or anybody else for services or outlays in the perpetration of a crime. But in. a proceeding like this, without any evidence that Ebel was directly chargeable with the perpetration of the crime or that he had been convicted or even arrested for it, participation in the crime cannot be seriously charged against him, and hence, so far as the case has been disclosed to us, there is no evidence that will warrant an attack on the validity of Ebel's judgment as against Corwin." This conclusion, in which we concur after a full consideration of the evidence, relieves the case of the question that might arise, if the evidence had satisfactorily shown that in hauling and storing the stolen goods, for which services he recovered in the action against Corwin, Ebel was a guilty participant in the theft. It is nevertheless an uncontroverted fact that by these acts Ebel assisted Corwin in his felonious conversion of the goods; and assuming for present purposes that the court had jurisdiction to inquire into the question, we do not disagree with the learned trial judge in his conclusion, that, although Ebel was a carter and under some circumstances might have been exempt from civil liability to Hoopes & Townsend Company, he is not exempt under the facts developed on the trial of this case. The learned judge clearly states the conclusion as follows: "The defendant (Ebel) having entered into relations with Corwin and having in consequence of such relations acquired knowledge beyond that ordinarily possessed by a carter, has lost the special and exceptional privilege of a carter, and is liable under the general rule to

the owner of stolen goods with which he has meddled, even if he be innocent of criminal knowledge or intent." It is important to notice that this finding was made in answer to a point declined by the court, that the "defendant, having by his participating in the acts of the conspirators, shown himself guilty, either of fraud or such gross negligence as amounts to it, it would be inequitable if he be allowed to profit thereby at the expense of the plaintiff." We are of opinion that the court's qualification of the point was proper under the evidence. Another point to be noticed is that there is no finding, and no evidence to sustain the appellee's contention, that there was collusion between Ebel and Corwin in the attachment proceeding.

We have, then, a case which may be stated as follows: A carter, without criminal knowledge or intent, and without fraud or such gross negligence as amounted to fraud, but with such knowledge and failure to exercise due care as would debar him from setting up the special and exceptional privilege of a carter in defense to a civil action brought against him by the party injured, assisted a thief in the felonious conversion of the goods of another by hauling them from the premises of the owner to places designated by the thief and storing some of them upon his own premises; for the value of the services thus rendered, he has obtained a judgment against the thief, not collusively, but by adverse, regular and legal proceedings; and is attempting to obtain satisfaction of his judgment out of property of the thief which never was the property of the party injured, and was not acquired by its owner in exchange for the stolen goods or the proceeds thereof. It is apparent, as already stated, that such property is impressed with no trust in favor of the owner of the stolen goods growing out of the source of the money or property with which it was acquired. We now advance a step further, and state what seems equally self-evident, that it is impressed with no trust, lien or charge in favor of the owner of the stolen goods by reason merely of his right to recover damages from the thief personally for the conversion thereof, or growing out of any moral obligation resting on him to repair the loss to the per-

son whose goods he has stolen before discharging his mere debts to other persons. But in the case we are considering, there is the additional element that the claim of the carter is founded on acts which made him civilly liable in damages to the owner of the stolen goods. Does this fact give a court of equity jurisdiction, at the instance of the latter, to restrain the former from collecting his debt by regular legal process? In Winch's Appeal, 61 Pa. 424, it was declared: "The jurisdiction given to a court of equity for the prevention or restraint of the commission of acts contrary to law and prejudicial to the rights of individuals, was never intended to be used to obstruct the collection of debts. It is only where the creditor is clearly and undeniably proceeding against right and justice, to use the process of the law to the injury of another, that equity intervenes to stay his hand." This statement of the rule or principle has been recognized in numerous later cases, including Natalie Anthracite Coal Company v. Ryon, 188 Pa. 138, cited in the opinion of the learned judge below, where the converse of the proposition is stated thus: "But where the process of the law is being used, against right and justice, to the injury of another, the right of the latter to invoke the intervention of a court of equity cannot be doubted." We conceive that nothing more is meant by this than that as equity is part of the law of Pennsylvania the jurisdiction conferred by the statute extends to the prevention of acts contrary to equity. But it is a familiar and elementary doctrine that equity, when used in this connection, is not to be taken in its popular sense, nor as comprehending everything which natural justice comprehends. Equity, as administered by the courts, has rules and principles which limit its scope as well as has law, and when the jurisdiction of a court of equity is invoked by a third person to restrain a creditor from collecting his debt by regular legal process out of the property of his debtor, it is incumbent on the complainant to point to some recognized rule or principle of equity jurisprudence that will be contravened if the creditor is not restrained. For example, in the absence of fraudulent intent and of a statute regulating the subject, a debtor may transfer his entire property to a single creditor

in discharge of the latter's claim, and neither law nor equity will interfere, although looking from the standpoint of moral obligation only, it may seem quite clear to a chancellor that he ought to have assigned it for the benefit of all his creditors, or have applied it in discharge of some more meritorious claim. A fortiori, the creditor, who obtains priority by mesne or final process, stands in a position quite as unassailable as if he had acquired his advantage over other creditors by the act of the debtor. He commits no wrong cognizable in law or equity in not yielding the preference he has obtained. We are quite clear that the equitable principles relating to frauds, to trusts, to subrogation and to marshaling securities do not apply, and a diligent investigation with the aid of the able opinion of the learned judge below has not made it clear that any other equitable principle distinguishes the case from the case we have just cited by way of illustration. We conclude, therefore, that if in the case we are considering there was any obligation resting on the carter to defer resort to legal process to collect his debt until after the complainant had obtained satisfaction of its claim out of Corwin's property, or to yield the precedence he had obtained by his attachment and execution, it belongs to that large class called imperfect obligations, resting upon conscience and moral duty only, of which, it has been said, equity does not assume control: Rees v. Watertown, 86 U. S. 107; Bispham's Equity (4th ed.), p. 54. For the civil wrong, which, without criminal knowledge and intent, he committed against the owner of the stolen goods, the latter has a remedy by action against him, and it has not been made to appear that it is inadequate.

The decree is reversed, and the bill is dismissed at the costs of the appellee.